Law Offices of Charles Wertman P.C.
Charles Wertman, Esq.
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
(516) 284-0900
*charles@cwertmanlaw.com*
*Proposed Counsel for Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                              Chapter 11
137 Falmouth Street LLC                          Case No. 1-25-43810 (nhl)
                    Debtor.
-------------------------------------------------------X

## FIRST AMENDED CHAPTER 11 LIQUIDATING
## PLAN OF REORGANIZATION OF 137 FALMOUTH STREET LLC

This First Amended Chapter 11 Liquidating Plan of Reorganization (the "First Amended Plan") amends and supplements the Debtor's Chapter 11 Liquidating Plan of Reorganization dated December 30, 2025 [Dkt. 32] (the "Original Plan"). Except as expressly amended herein, all provisions of the Original Plan remain unchanged and in full force and effect.

137 Falmouth Street LLC, as debtor and debtor in possession (the "**Debtor**"), proposes this First Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to sections 1121 and 1123 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"). This Plan is intended to correlate with and implement the Debtor's disclosure statement (the "**Disclosure Statement**"), approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code. In the event of any inconsistency between the Plan and the Disclosure Statement, the terms of this Plan shall govern.

### OVERVIEW OF THE PLAN

The Debtor's Plan is a liquidating plan, the centerpiece of which is the sale of the Debtor's sole real property asset located at 137 Falmouth Street, Brooklyn, New York (the "**Property**"). The Property has served as the long-time primary residence of the Debtor's principal and managing member, Esther Dweck ("Dweck").

The Debtor has entered into a contract to sell the Property. The Plan provides for consummation of the sale following confirmation of the Plan and satisfaction of the conditions to the Effective Date. It is the Debtor's position that the proposed sale will generate sufficient proceeds to pay all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims, and Allowed General Unsecured Claims in full, with any remaining proceeds distributed to equity and ultimately paid to the Debtor's principal, consistent with the Plan.

Dweck has resided at the Property as her primary home since approximately 1976. Approximately nine years ago, she suffered a major heart attack that left her permanently disabled and in need of continuous, full-time home health-care assistance. Since that time, she has relied on daily caregivers for medical monitoring, physical assistance, and personal support.

The Plan expressly provides for the sale of the Property for a gross purchase price of $1.6 million, with the transfer of title to occur only after entry of the Confirmation Order and in consummation of the Plan. The sale shall be implemented pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, as incorporated into the confirmed Plan. The conveyance of the Property shall constitute a transfer "under a plan confirmed under chapter 11" within the meaning of section 1146(a) of the Bankruptcy Code.

The sale will satisfy the Secured Creditor's mortgage debt and all related obligations and will enable Dweck to relocate to her son's residence, where she will continue to receive the full-time care and family support required by her medical condition.

Upon the closing of the sale, the Debtor shall pay in full the Allowed Secured Claim, together with all Allowed Administrative Claims and professional fees, and shall satisfy any other Allowed Claims in accordance with the Plan. To the extent any Allowed General Unsecured Claims exist, distributions shall be made from the net sale proceeds in accordance with the priority and treatment provisions of the Plan. Any remaining net proceeds shall be retained by the Debtor and used to address Dweck's ongoing medical care, home-care assistance, and reasonable living needs, consistent with the objectives of the Plan and the best interests of the estate.

## 1.    ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

1.1.    Capitalized terms used but not defined herein have the meanings ascribed in the Disclosure Statement. In the event of an inconsistency between this Plan and the Disclosure

Statement, this Plan controls. Each reference to the Debtor includes the Debtor as debtor in possession under sections 1107 and 1108, as applicable.

1.2.    "**Administrative Claim**" means any Claim entitled to priority under sections 503(b) or 507(a)(2) of the Bankruptcy Code, including, without limitation, Professional Fee Claims and fees payable to the United States Trustee.

1.3.    "**Allowed**" means, with respect to any Claim or Interest, allowed under section 502 of the Bankruptcy Code or otherwise deemed allowed pursuant to this Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court.

1.4.    "**Allowed Claim**" means a Claim that is Allowed.

1.5.    "**Bankruptcy Case**" means the chapter 11 case of the Debtor pending before the Bankruptcy Court.

1.6.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.7.    "**Business Day**" means any day other than a Saturday, Sunday, or legal holiday.

1.8.    "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.9.    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.10.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.11.    "**Effective Date**" means the first Business Day after all conditions precedent to the effectiveness of the Plan have been satisfied or waived.

1.12.    "**Equity Interest**" means any membership interest or other equity interest in the Debtor.

1.13.    "**General Unsecured Claim**" means any Allowed Claim that is not an Administrative Claim, Priority Tax Claim, or Secured Claim.

1.14.    "**Lender**" means Abacus Federal Savings Bank.

1.15.    "**Mortgage**" means the mortgage, note, and consolidation, extension, and modification agreements encumbering the Property, as described in the Disclosure Statement.

1.16.    "**Priority Tax Claim**" means any Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.17.   "**Property**" means the real property located at 137 Falmouth Street, Brooklyn, New York.

1.18.   "**Sale**" means the sale of the Property pursuant to this Plan.

1.19.   "**Sale Proceeds**" means all cash proceeds realized from the Sale, net of customary closing adjustments.

1.20.   "**Secured Claim**" means a Claim secured by a valid lien on property of the Estate.

1.21.   **Rules of Construction.** Headings are for convenience only and shall not affect interpretation. The singular includes the plural and vice versa. References to sections are references to sections of this Plan unless otherwise indicated.

2.   **ARTICLE II**
**JURISDICTION AND VENUE**

2.1.   **Jurisdiction**. The Bankruptcy Court has jurisdiction over the Bankruptcy Case and the Plan pursuant to 28 U.S.C. §§ 157 and 1334.

2.2.   **Venue**. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.3.   **Core Proceeding**. Confirmation of this Plan is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.   **ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

UNCLASSIFIED CLAIMS. Pursuant to sections 1123(a)(1) and 1129(a)(9) of the Bankruptcy Code, the following Claims are not classified and shall be treated as set forth below:

3.1.   **Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim under section 503(b) of the Bankruptcy Code, including, without limitation, Professional Fee Claims and fees payable to the United States Trustee, shall receive Cash equal to the unpaid portion of such Allowed Claim on the later of the Effective Date or the date such Claim becomes Allowed, or as otherwise agreed in writing.

3.2.   **Professional Fee Claims** Professionals retained under section 327 of the Bankruptcy Code shall file final fee applications. Allowed Professional Fee Claims shall be paid in full in Cash on or after the Effective Date pursuant to orders of the Bankruptcy Court.

At closing of the Sale, the Debtor shall fund a professional fee reserve in an amount not to exceed $50,000.00, to be held in a segregated trust account by Debtor's counsel pending final fee approval by the Bankruptcy Court.

3.3.    **U.S. Trustee Fees**  All fees due under 28 U.S.C. § 1930 shall be paid in full on the Effective Date and thereafter as required until the case is closed, dismissed, or converted.

3.4.    **Priority Tax Claims**  ~~Each holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Bankruptcy Code shall receive treatment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, including payment in full in Cash on the Effective Date, or, if permitted and agreed, in deferred Cash payments over a period not to exceed five (5) years from the Petition Date, together with interest as required by law.~~  Each holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Bankruptcy Code shall be paid in full in Cash on the Effective Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

CLASSIFICATION OF CLAIMS AND INTERESTS    Except for Unclassified Claims, all Claims and Interests are classified as set forth below pursuant to section 1122.

**Class 1 – Secured Claim (Unimpaired).**

(a) *Treatment*. The Allowed Secured Claim of the Lender shall be paid in full in Cash from the Sale Proceeds on or prior to the Effective Date. Upon payment in full, the Mortgage and all related liens shall be released and discharged.

(b) *Status*. Class 1 is Unimpaired within the meaning of section 1124 of the Bankruptcy Code and is conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 2 – General Unsecured Claims (Unimpaired).**

(a) *Treatment*. Each Allowed General Unsecured Claim shall be paid in full in Cash from remaining Sale Proceeds after payment of senior classes. Allowed General Unsecured Claims shall not be entitled to post-petition interest, except to the extent required by applicable law.

(b) *Status*. Class 2 is Unimpaired.

**Class 3 – Equity Interests.**

(a) Treatment. Equity Interests shall be retained. No distribution shall be made on account of Equity Interests unless and until all Allowed Claims are paid in full.

4.    **ARTICLE IV**
      **MEANS FOR IMPLEMENTATION**

4.1.    **Plan Funding.** Distributions under the Plan shall be funded from the net proceeds of the

sale of the Debtor's real property located at 137 Falmouth Street, Brooklyn, New York, to be consummated pursuant to section 363 of the Bankruptcy Code, as incorporated into and implemented under the confirmed Plan.

4.2.    **Plan Administrator**. On and after the Effective Date, Charles Wertman, Esq., as counsel to the Debtor, shall serve as the Plan Administrator. The Plan Administrator shall be authorized to implement and consummate the Plan, reconcile and resolve Claims, make distributions in accordance with the Plan, prosecute or settle any retained Causes of Action, and take such other actions as are necessary or appropriate to carry out the provisions of the Plan, subject to the oversight and jurisdiction of the Bankruptcy Court.

**4.3.    Exemption from Transfer Taxes.**    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of property, including the execution, delivery, and recording of any deed or other instrument of transfer, occurring under a plan confirmed under chapter 11 of the Bankruptcy Code, including the transfer of the Property contemplated by and consummated pursuant to this Plan and the Confirmation Order, shall not be subject to any stamp, transfer, conveyance, mortgage recording, real estate transfer, or similar tax or governmental assessment imposed by any federal, state, or local authority. The Confirmation Order shall direct the appropriate governmental officials or agents to accept for filing or recordation any such instruments without the payment of any such tax or assessment.

4.4.    Record Date.   The record date for purposes of determining holders entitled to receive distributions under the Plan shall be the Confirmation Date.

4.5.    **Bar Date; Objections to Claims.** Claims filed after the applicable Claims Bar Date shall be disallowed and barred, and holders of such Claims shall not be entitled to receive any distribution under the Plan. The Plan Administrator may object to Claims and may settle, compromise, or otherwise resolve any Claim or Claim objection, subject to Bankruptcy Court approval where required. No distribution shall be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim.

4.6.    **Unclaimed Distributions.**  Any distribution under the Plan that is not claimed within ninety (90) days after the date such distribution is made shall be deemed unclaimed and shall be retained by the Debtor free and clear of any Claims or Interests.

4.7.    **Voting and Confirmation.**   Because all Classes of Claims are Unimpaired under the

Plan, each such Class is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and no solicitation of acceptances or voting on the Plan is required.

5.    **ARTICLE V**
      **CONDITIONS PRECEDENT TO CONFIRMATION; THE EFFECTIVE DATE**

5.1.    **Conditions to Confirmation.** Entry of a Confirmation Order in form and substance reasonably satisfactory to the Debtor, approving the Plan and all related documents and authorizing implementation under section 1142.

5.2.    **Conditions to Effective Date**. Among others: (a) the Confirmation Order has become a Final Order; (b) execution and delivery of all documents in the Plan Supplement; (c) closing of the exit facility (if any); (d) payment of all amounts required to be paid on the Effective Date; and (e) all governmental approvals, if any, have been obtained or are not required.

5.3.    **Waiver of Conditions**. The Debtor may waive any condition to the Effective Date (other than payment of U.S. Trustee fees) by filing a notice on the docket.

5.4.    **Retention of Jurisdiction**    Following the Effective Date, the Court shall retain jurisdiction to the maximum extent permitted by law, including to: (a) resolve claim objections; (b) interpret and enforce the Plan and Confirmation Order; (c) adjudicate Causes of Action; (d) enter orders regarding assumption or rejection; (e) resolve disputes concerning distributions; and (f) enter a final decree closing the case.

      **ARTICLE VI**
6.    **DISCHARGE OF CLAIMS; INJUNCTION**

6.1.    ~~**Discharge**. Except as otherwise provided herein, on the Effective Date and in exchange for the consideration provided under the Plan, the Debtor shall be discharged to the extent provided by section 1141(d), and the Confirmation Order shall constitute an injunction under section 524(a) to enforce such discharge.~~

6.2.    ~~**Debtor Releases.** Effective as of the Effective Date, the Debtor releases the Debtor's current and former directors, officers, employees, professionals, and agents for pre- and post-petition acts or omissions in connection with the Chapter 11 Case, the Plan, and the Disclosure Statement, except for actual fraud, willful misconduct, or gross negligence.~~

6.1. Notwithstanding anything herein to the contrary, the provisions of this Article VI are subject

to and modified by the Confirmation Order.

6.2. Discharge. Except as expressly provided in the Confirmation Order, the Debtor shall **not** receive a discharge under section 1141(d) of the Bankruptcy Code.

6.3. Debtor Releases. Any releases of non-Debtor parties are subject to approval in the Confirmation Order. No nonconsensual third-party releases are granted by this Plan.

6.4.    **Exculpation**. To the fullest extent permitted by law, the Debtor's estate fiduciaries (including the Plan Administrator and Professionals) shall not have or incur liability for actions taken in good faith in connection with the Chapter 11 Case, the Plan, the Disclosure Statement, and Plan implementation, except for actual fraud, willful misconduct, or gross negligence.

6.5.    **Injunction**. ~~All entities are permanently enjoined from commencing or continuing any action on account of any Claim or Interest discharged, released, or exculpated pursuant to the Plan.~~

Any injunction arising in connection with the Plan shall be solely as set forth in the Confirmation Order and shall not operate to enjoin claims against non-Debtor third parties except as expressly authorized therein.

6.6.    **Third-Party Releases.** No nonconsensual third-party releases are provided by this Plan; any third-party release must be expressly authorized by the Court after notice and an opportunity to opt in.

6.7.    **Preservation of Causes of Action**    Except as expressly released, the Debtor and Reorganized Debtor reserve and retain all Causes of Action, including avoidance actions and claims against insiders and third parties, which shall vest in the Reorganized Debtor on the Effective Date and may be pursued by the Plan Administrator in its discretion.

6.8.    **Termination of the Debtor in Possession; Plan Administrator Powers**.    On the Effective Date, the authority of the Debtor as debtor in possession shall cease, and the Plan Administrator shall have authority to carry out the Plan, including executing documents, making distributions, and taking actions contemplated by section 1142(b).

7.    **ARTICLE VII**
      **MISCELLANEOUS PROVISIONS**

7.1.    **Successors and Assigns**. The rights, benefits, and obligations of any entity named or

referred to in the Plan shall be binding on, and inure to, the benefit of any successor or assign.

7.2.    **Modification of the Plan.** The Debtor may modify the Plan prior to confirmation under section 1127(a), and after confirmation and before substantial consummation under section 1127(b), with Court approval.

7.3.    **Severability.** If any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability of any other provision.

7.4.    **Notices.** All notices, requests, demands, and other communications required or permitted to be given under the Plan shall be in writing and shall be deemed duly given when served in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York. Notices to the Debtor or the Plan Administrator shall be sent to:

**Law Offices of Charles Wertman, P.C.**
Charles Wertman, Esq.
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
Telephone: (516) 284-0900
Email: charles@cwertmanlaw.com

The Debtor or Plan Administrator may change the notice address by filing a notice with the Bankruptcy Court and serving such notice in accordance with applicable rules.

7.5.**Setoffs and Recoupment.** The Debtor or Reorganized Debtor may assert setoff and recoupment rights as permitted under applicable law, preserving all defenses.

7.6.    **Governing Law**. Except to the extent the Bankruptcy Code or other federal law controls, the Plan shall be governed by the laws of the State of New York, without giving effect to conflict of laws.

### CONCLUSION

The Debtor respectfully submits that the Plan satisfies all applicable requirements of the Bankruptcy Code and should be confirmed.

Rockville Centre, New York
February 5, 2026

/s/ Charles Wertman

Law Offices of Charles Wertman, P.C.
Attorney for the Debtor

By: */s/Charles Wertman*
Charles Wertman, Esq.
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
Tel. No. (516) 284-0900
charles@cwertmanlaw.com